# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

BAKMAN WATER COMPANY

|  |  |
|---|---|
| Plaintiff, | ) MDL No. 2873 |
| | ) Master Docket: 2:18-mn-2873 |
| v. | ) |
| | ) JUDGE RICHARD GERGEL |
| 3M COMPANY (f/k/a Minnesota Mining and | ) |
| Manufacturing, Co.); TYCO FIRE PRODUCTS | ) Civil Case No.: 2:19-cv-2784-RMG |
| LP (successor-in-interest to The Ansul Company); | ) |
| CHEMGUARD, INC.; JOHNSON CONTROLS | ) DIRECT FILED COMPLAINT |
| INTERNATIONAL PLC; KIDDE PLC, INC.; | ) AND JURY DEMAND |
| KIDDE FIRE FIGHTING, INC.; KIDDE- | ) PURSUANT TO CASE |
| FENWAL, INC.; UTC FIRE & SECURITY | ) MANAGEMENT ORDER NO. 3 |
| AMERICAS CORPORATION, INC.; | ) |
| NATIONAL FOAM, INC.; ANGUS FIRE | ) |
| ARMOUR CORP.; ANGUS INTERNATIONAL | ) |
| SAFETY GROUP, LTD.; BUCKEYE FIRE | ) |
| EQUIPMENT COMPANY; | ) |
| UNITED TECHNOLOGIES CORPORATION; | ) |
| CHUBB FIRE & SECURITY, LTD.; | ) |
| E. I. DU PONT DE NEMOURS AND COMPANY; | ) |
| THE CHEMOURS COMPANY; | ) |
| DOWDUPONT, INC.; THE CHEMOURS | ) |
| COMPANY FC, LLC; ARKEMA, INC.; | ) |
| ARKEMA FRANCE, S.A.; JOHN DOE | ) |
| DEFENDANTS 1-49, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S ORIGINAL COMPLAINT

Bakman Water Company ("Bakman" or "Plaintiff"), by and through its undersigned

counsel, as and for its complaint against the Defendants, 3M Company (f/k/a Minnesota Mining

and Manufacturing, Co.), Tyco Fire Products, LP (individually and as successor-in-interest to

The Ansul Company), Chemguard, Inc., Johnson Controls International, plc, Kidde PLC, Inc.,

Kidde Fire Fighting, Inc., Kidde-Fenwal, Inc., UTC Fire & Security Americas Corporation, Inc.,

National Foam, Inc., Angus Fire Armour Corporation, Angus International Safety Group, Ltd.,

1

Buckeye Fire Equipment Company, United Technologies Corporation, Chubb Fire & Security, Ltd., E. I. Du Pont de Nemours and Company, The Chemours Company, DowDuPont, Inc., The Chemours Company FC, LLC, Arkema Inc., Arkema France, S.A., and John Doe Defendants 1-49 (collectively, "Defendants"), and alleges as follows:

## I.    <u>SUMMARY OF THE CASE</u>

1.  Plaintiff brings this action against Defendants to recover damages, contribution and reimbursement of costs incurred, and which continue to be incurred, to address the presence of per- and polyfluoroalkyl substances ("PFAS"), including but not limited to perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), found in Plaintiff's public water supply wells.

2.  Plaintiff is a public utility company located in Fresno, California, and currently provides water to over 20,000 people across two California counties.

3.  At various times from the 1960s through today, Defendants designed, manufactured, marketed, and/or sold aqueous film-forming foam ("AFFF"), a firefighting agent used to extinguish Class B flammable liquid fuel fires.

4.  Defendants designed, manufactured, marketed, and sold AFFF throughout the United States, including in California.

5.  Defendants' AFFF contained PFAS, specifically, PFOA and/or PFOS, and/or contained the precursors to PFOA and PFOS.

6.  Human exposure to PFOA is associated with an increased risk of kidney and testicular cancer, and ulcerative colitis, among other conditions.  Human exposure to PFOA and PFOS is associated with an increased risk of immune system effects, changes in liver enzymes and thyroid hormones, low birthweight, and other adverse health conditions.

7. Defendants knew, or should have known, that PFOA and PFOS are highly mobile in water, not easily biodegradable, persistent in the environment, and present significant and unreasonable risks to human health and the environment.

8. Nevertheless, the Defendants manufactured, sold, and were otherwise responsible for placing AFFF products containing PFOS and/or PFOA into the stream of commerce, and for the release of these compounds into the environment, with the knowledge that PFOA and/or PFOS would be released into the environment in the course of firefighting training exercises and in firefighting emergencies.

9. As a result of Defendants' acts and omissions, these compounds entered into a critical source of water relied upon by Plaintiff to supply its customers, thereby contaminating Plaintiff's wells and property.

10. As a result of the use of the Defendants' AFFF for its intended purpose, PFOA and PFOS were discharged at substantial levels into the environment at or from sites throughout the United States, including in California.

11. At all times pertinent herein, Plaintiff did not know, nor should it have known, of the ongoing contamination of its property through the use of Defendants' AFFF as the Defendants did not disclose the toxic nature and harmful effects of their AFFF products.

12. In April 2019, the California State Water Resources Control Board issued specific orders to 600 water system sites, selected based on factors such as proximity to airports, fire training facilities, and solid waste landfills, to be tested for PFOA and PFOS.

13. Plaintiff's water system was one of the systems that received the April 2019 order. The April 2019 order directed Plaintiff to test six (6) specific drinking water supply wells within its system. These wells are located in the vicinity of Fresno-Yosemite International Airport. Of

the six (6) wells tested, four (4) came back with positive detections for PFAS compounds, including PFOS and PFOA.

14. At the time of the April 2019 order, California's notification level was 14 parts per trillion (ppt) for PFOA and 13 ppt for PFOS.

15. California's Office of Environmental Health Hazard Assessment (OEHHA) has since reassessed the notification levels, and in August 2019, OEHHA reissued new notification levels of 5.1 ppt for PFOA and 6.5 ppt for PFOS; these new, lower levels will apply to the next round of quarterly testing.

16. As the manufacturers and sellers of products that contain PFAS, Defendants are responsible for PFAS contaminants released into the groundwater that serves as a supply source for Plaintiff's water supply system.

17. Through this action, Plaintiff seeks to recover compensatory and/or consequential damages for the damage to its property as a result of the continuous and ongoing contamination of its property by Defendants' PFOS and/or PFOA; and for the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's contaminated wells and water supply.

## II.     PARTIES

18. Plaintiff is a public utility company, existing under the laws of the State of California, with its principal office located at 5105 E. Belmont Avenue, Fresno, California 93727.  Plaintiff owns and operates a public water supply system (System No. CA1010001) under the Safe Drinking Water Act, 42 U.S.C. § 300f(15).  Plaintiff services the area in Southeast Fresno bounded by Olive Avenue, East Kings Canyon Road, Winery Avenue and Fowler Avenue, as

4

well as the Rolling Hills neighborhood in Madera County.   Plaintiff's primary source of water for its public water supply system is groundwater.

19. Plaintiff's public water supply system includes nineteen (19) groundwater wells, of which five (5) are active, seven (7) are on standby, five (5) are inactive, and two (2) are destroyed.

20. Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144.   3M is registered to do business in the State of California. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

21. 3M is the only company that manufactured and/or sold AFFF containing PFOS.

22. Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.  Tyco is registered to do business in the State of California.

23. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

24. Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco").  At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

25. Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

26. Defendant Johnson Controls International, plc ("Johnson Controls") is a foreign corporation headquartered in Cork, Ireland, and with a principal place of business in the United States located at 5757 N. Green Bay Avenue, Milwaukee, Wisconsin 53209. Johnson Controls, through mergers and/or acquisitions, is responsible for AFFF sold under the names Ansul Company, Chemguard and/or Tyco Fire Products.

27. Defendant Kidde PLC, Inc. ("Kidde PLC") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

28. Defendant Kidde Fire Fighting, Inc. ("Kidde Fire") is a Pennsylvania corporation with principal offices at 150 Gordon Drive, Exton, Pennsylvania 19341. Upon information and belief, Kidde Fire was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

29. Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 400 Main Street, Ashland, Massachusetts 01721. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). Kidde-Fenwal does business throughout the United States, including conducting business in California.

30. Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092.  UTC is registered to do business in California. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

31. Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501.  National Foam manufactures the Angus brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire").  National Foam/Angus Fire does and/or has done business throughout the United States, including in California.  This Defendant manufactured and sold AFFF that contained PFOA.

32. Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with its principal offices at 141 Junny Road, Angier, North Carolina 27501.  Upon information and belief, Angus International is the corporate parent of National Foam and Angus Fire.

33. Defendant Angus International Safety Group, Ltd. ("Angus International") is a foreign private limited company, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom LA2 7NA. Upon information and belief, Angus International is registered in the United Kingdom with a registered number of 8441763.

34. Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.  Buckeye is registered to do business in California.  This Defendant manufactured and sold AFFF that contained PFOA.

35. Defendant United Technologies Corporation ("United Technologies") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032. United Technologies is registered to do business in the State of California.

36. Defendant Chubb Fire & Security, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation.

37. Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. DuPont is registered to do business in the State of California.

38. Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899. Chemours does business throughout the United States, and is registered to do business in the State of California.

39. In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit

8

and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

40. Defendant DowDuPont Inc. ("DowDuPont") is a Delaware corporation with its principal places of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDuPont is the resulting parent entity from the merger of Dow Chemical Company and DuPont that became effective August 31, 2017. DowDuPont is the parent of DuPont and, upon information and belief, is liable for damages set forth herein.

41. Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware Corporation and conducts business throughout the United States, including the State of California. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

42. Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is registered to do business in California. Arkema, Inc. is an operating subsidiary of Defendant Arkema France, S.A.

43. Defendant Arkema France, S.A. is a publicly traded foreign corporation having its principal place of business in Colombes, France. Arkema France, S.A. is the parent corporation of Defendant Arkema, Inc. Arkema France, S.A. and Arkema, Inc. are collectively referred to herein as "Arkema."

44. Upon information and belief, Defendants John Doe 1-49 were manufacturers and/or sellers of AFFF. Although the identities of the John Doe Defendants are currently unknown, it is

expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

45. The foregoing Defendants, including the John Doe Defendants, all were manufacturers and/or or sellers of AFFF containing PFOS and/or PFOA who, on information and belief, manufactured, distributed, and/or sold AFFF containing PFOS and/or PFOA that was used on the Plaintiff's Property.

46. When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION AND VENUE

47. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiff and Defendants and the amount in damages exceeds the minimal jurisdictional limits of this Court.

48. Venue is appropriate in this judicial district pursuant to this Court's Case Management Order No. 3 ("CMO 3"). Plaintiff states that but for CMO 3 permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this

Complaint in the United States District Court for the Eastern District of California.  Further, in accordance with CMO 3, Plaintiff hereby designates the United States District Court for the Eastern District of California as the "Home Venue" as this case may have originally been filed there.

49. Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff is a resident and citizen, a substantial part of the property that is the subject of this action is situated in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## IV.    FACTUAL ALLEGATIONS

### A.    THE CONTAMINANTS: PFOA & PFOS

50. PFOA and PFOS are two chemicals within a class known as perfluoroalkyl acids ("PFAAs"). PFAAs are part of a larger chemical family known as per- and polyfluoroalkyl substances ("PFAS").  PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature which is why these molecules are so persistent and bioaccumulate.

51. PFAAs are sometimes described as long-chain and short-chain, depending on the number of carbon atoms contained in the carbon chain.  PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

52. PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation.

Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

53. PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

54. PFOA and PFOS are persistent in the human body and resistant to metabolic degradation.  A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

55. Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS.

56. According to the EPA, "…studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[3]

57. The EPA has also warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

---

[1] *See* Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html.

[2] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55; Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 55, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[3] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[4] *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822 R-16-002, available

58. The EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example […] an airfield at which [PFOA/PFOS] were used for firefighting."[5]

## B.    THE PRODUCT: AQUEOUS FILM-FORMING FOAM

59. AFFF is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

60. The AFFF made by Defendants contained either or both PFOA and PFOS.

61. The AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

62. AFFF can be made without PFOA and PFOS. Fluorine-free foams do not release PFOA and/or PFOS into the environment. Despite knowledge of this fact as well as knowledge of the toxic nature of AFFF made with PFOA and/or PFOS, Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS which led to the ongoing contamination and damages to Plaintiff's Property.

63. AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

---

at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[5] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

64. When used as the Defendants intended and directed, the AFFF manufactured and/or sold by the Defendants released PFOA and/or PFOS into the environment.

65. Once PFOA and PFOS are free in the environment they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

66. Defendants' AFFF containing PFOS and/or PFOA has been used for its intended purpose in the process of fire protection, training, and response activities within California for many years. During these activities, AFFF was used as directed and intended by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into the groundwater, enter into Plaintiff's property, thereby contaminating Plaintiff's wells and property, as well as causing other extensive and ongoing damages to Plaintiff's property.

67. Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to Plaintiff and Plaintiff's property.

## C.    DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS

68. On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

69. At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and

gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

70. In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[6]

71. By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

72. In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[7]

73. Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned, "we must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[8]

---

[6] *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

[7] *See* Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

[8] *See* Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

74. Notwithstanding their respective  knowledge of the dangers of AFFF made with PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil and/or waste water disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil and groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

75. As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOA and PFOS, creating an environmental and public health hazard, unless such contamination is remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination of its property at significant expense, loss and damage to Plaintiff.

76. Defendants had and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products.  Defendants also had and breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Defendants failed to warn Plaintiff of the known risks for environmental

and health hazards arising from the usage of AFFF containing PFOA and/or PFOS in its intended manner for its intended purpose.

**D.    THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY**

77. PFOA and PFOS have been detected in varying amounts, at varying times in water extracted from Plaintiff's wells.  It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS in its groundwater source, well water, or elsewhere on its property requires investigation, remediation and monitoring.  The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's property in varying amounts and at varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff.

78. Upon information and belief, the invasion of Plaintiff's property with PFOA and PFOS is recurring—new contamination flows regularly and constantly into Plaintiff's property each day, resulting in new harm to the property and Plaintiff on each occasion.

79. The injuries and damages to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the Plaintiff's property. Plaintiff's interests in protecting its property constitute a reason for seeking damages sufficient to treat the contamination and restore such property to its pre-contamination condition.

80. As a direct result of Defendants' actions and omissions, Plaintiff has had to address PFAS contamination of their groundwater wells, many of which are located within the vicinity of the Fresno-Yosemite International Airport.   In doing so, Plaintiff has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by Plaintiff, including costs to conduct sampling, costs for its personnel to supervise

the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

## **FIRST CAUSE OF ACTION**

### STRICT LIABILITY – DEFECTIVE DESIGN

81. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

82. Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and/or selling PFOS and/or PFOA and products containing PFOS and/or PFOA, resulting in contamination of the environment, including the groundwater that serves as a water source for Plaintiff's public water supply system, thereby causing damage to Plaintiff.

83. As manufacturers, designers, distributors, suppliers, sellers, and marketers of AFFF containing PFOA and/or PFOS, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

84. Defendants' PFAS products were defective in design and formulation when they left the hands of Defendants.

85. Defendants knew, or should have known, that use of AFFF in its intended manner would result in the spillage, discharge, disposal, or release of PFOA and/or PFOS into or onto land with associated migration to groundwater.

86. Defendants knew or should have known of the harmful and adverse impacts that exposure to its PFAS compounds would have on the environment and human health.

87. By causing PFAS contamination and the resulting impact to Plaintiff's public water supply system, Defendants engaged in marketing products that are not reasonably safe and are unreasonably dangerous, for which they are strictly liable.

88. As a result of Defendants' actions, Plaintiff has incurred, and will continue to incur, investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to PFAS contamination of its public water supply system.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY – FAILURE TO WARN

89. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

90. Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and/or selling PFOS and/or PFOA and products containing PFOS and/or PFOA, resulting in contamination of the environment, including the groundwater that serves as a water source for Plaintiff's public water supply system, thereby causing damage to Plaintiff.

91. Defendants knew, or should have known, that use of AFFF in its intended manner would result in the spillage, discharge, disposal, or release of PFOA and/or PFOS into or onto land with associated migration to groundwater.

92. Defendants knew, or should have known, of the harmful effects and adverse impacts that exposure to its PFAS compounds would have on the environment and human health.

93. Defendants failed to provide warnings or instructions that were sufficient to notify the users of the dangers inherent in their products or of methods of use that could reduce or eliminate those dangers.

94. Defendants' failure to warn or adequately instruct regarding the dangers associated with use of these products directly and proximately caused harm to Plaintiff.

95. As a result of Defendants' failure to warn, Plaintiff has incurred, and will continue to incur, investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to PFAS contamination of its public water supply system.

### THIRD CAUSE OF ACTION

NEGLIGENCE

96. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

97. Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and/or selling PFOS and/or PFOA and products containing PFOS and/or PFOA. As such, Defendants had a duty to exercise reasonable case in the manufacture, distribution and use of its PFOA and/or PFOS and products containing PFOA and/or PFOS so as to avoid harm to those who would be foreseeably injured by PFAS environmental contamination.

98. California Civil Code Section 3479 is intended to protect property owners and possessors, such as Plaintiff, from unreasonable interference with their property rights, and to prevent injuries to property and the free use and enjoyment thereof.

99. Defendants had a duty to comply with California Civil Code Section 3479, and Defendants breached that duty when they caused contamination to Plaintiff's public water supply system.

100. Defendants knew, or should have known, that use of AFFF in its intended manner would result in the spillage, discharge, disposal, or release of PFOA and/or PFOS into or onto land with associated migration to groundwater.

101.    Defendants knew, or should have known, of the harmful effects and adverse impacts that exposure to its PFAS compounds would have on the environment and human health.

102.    Defendants failed to exercise due care in the design, manufacturing, marketing and sale of PFOS and/or PFOA and products containing PFOS and/or PFOA.  By failing to exercise this due care, Defendants breached their duty to avoid harm to Plaintiff.

103.    Furthermore, Defendants' acts were willful, wanton or reckless and were conducted with a reckless disregard to the rights of Plaintiff.

104.    As a result of Defendants' negligence, Plaintiff has incurred, and will continue to incur, investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to PFAS contamination of its public water supply system.

105.    As a result of Defendants' actions and omissions, Plaintiff has suffered and continues to suffer damages.

**FOURTH CAUSE OF ACTION**

PRIVATE NUISANCE

106.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

107.    By Defendants' acts and omissions, Defendants' PFOS and/or PFOA and products containing PFOS and/or PFOA have directly and proximately caused environmental contamination and health hazards that have unreasonably interfered with, and continue to interfere with, Plaintiff's use and enjoyment of its public water supply system and the groundwater sources that supply that system.

108.    Defendants have failed, and continue to fail, to abate the nuisance.

109.    Defendants knew, or should have known, of the harmful effects and adverse impacts that exposure to its PFAS compounds would have on the environment and human health.

110.    Defendants knew, or should have known, that their actions and omissions as described herein would cause injury and damage to the groundwater supplying Plaintiff's public water supply system, thereby causing injury and damage to Plaintiff's property.

111.    Defendants' actions and omissions were performed knowingly, willfully, and with oppression, fraud and/or malice.  Furthermore, Defendants' actions and omissions were undertaken with a conscious disregard for the probable and foreseeable dangerous consequences of that conduct would have on the public and the environment.

112.    As a result of the nuisance, Plaintiff has suffered and continues to suffer significant damages and injuries, including but not limited to, incurring costs related to the investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to the detection and remediation of the PFAS contamination of its public water supply system.

## FIFTH CAUSE OF ACTION

### TRESPASS

113.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

114.    Plaintiff owns and operates a public water supply system in California which includes, among other things, water supply wells that utilize groundwater to supply drinking water to the public.

115.    Plaintiff has not granted permission to Defendants to allow PFAS contamination to enter any of Plaintiff's water supply wells.

116.    Defendants knew, or should have known, that PFOS and PFOA are highly mobile and persistent in water, and readily move through surface and groundwater systems, thereby infiltrating groundwater aquifers and contaminating water supply wells, such as Plaintiff's, and threatening public drinking water supplies.

117.    Defendants' actions and omissions directly and proximately harmed Plaintiff, and each Defendant is jointly responsible for the trespass and injuries resulting therefrom.

## SIXTH CAUSE OF ACTION

LIABILITY PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1882

118.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

119.    Plaintiff is a utility and operates a public water supply system.  The groundwater that supplies Plaintiff's wells is property owned or used by Plaintiff to provide utility services. The water pumped from Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

120.    California Civil Code Section 1882.1 states, "[a] utility may bring a civil action for damages against any person who commits, authorizes, solicits, aids, abets, or attempts any of the following acts:

    a.  Diverts, or causes to be diverted, utility services by any means whatsoever.

    b.  Makes, or causes to be made, any connection or reconnection with property owned or used by the utility to provide utility service without the authorization or consent of the utility.

    c.  Prevents any utility meter, or other device used in determining the charge for utility services, from accurately performing its measuring function by tampering or by any other means.

    d.   Tampers with any property owned or used by the utility to provide utility services.

    e.   Uses or receives the direct benefit of all, or a portion, of the utility service with knowledge of, or reason to believe that, the diversion, tampering, or unauthorized connection existed at the time of the use, or that the use or receipt, was without the authorization or consent of the utility."

121.   By causing the introduction of PFOS and/or PFOA into Plaintiff's wells and the groundwater that supplies those wells, Defendants injured, altered, interfered with, and/or otherwise prevented property owned or used by Plaintiff from performing its normal or customary function in Plaintiff's provision of utility services.

122.   As a result of Defendants' actions and omissions as described herein, Plaintiff has incurred, and will continue to incur, costs and damages related to the investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other detection and treatment related to PFAS contamination of its public water supply system.

123.   "In any civil action brought pursuant to Section 1882.1, the utility may recover as damages three times the amount of actual damages, if any, plus the cost of the suit and reasonable attorney's fees."  California Civil Code Section 1882.2.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

    a.   Enter judgment finding Defendants jointly and severally liable for all costs and damages incurred by Plaintiff, including but not limited to prior, interim and future capital as well as operation and maintenance costs related to PFAS contamination in Plaintiff's wells; including the reasonable costs of sampling, investigations, and assessment of injury, and destruction or loss resulting from PFAS contamination;

b.  Enter judgment finding Defendants liable for punitive damages;

c.  Enter judgment finding Defendants liable for consequential damages;

d.  Enter judgment requiring, via injunction, Defendants to abate the nuisance they have created;

e.  Award Plaintiff treble damages, pursuant to California Civil Code Section 1882.2;

f.  Award Plaintiff the costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

g.  Award Plaintiff such other relief as this Court deems appropriate.

## **<u>DEMAND FOR JURY TRIAL</u>**

Demand is hereby made for a trial by jury.

Dated: September 30, 2019

                                        Respectfully submitted,


                                        Scott Summy
                                        (Texas Bar No. 19507500)
                                        **BARON & BUDD, P.C.**
                                        3102 Oak Lawn Avenue, Suite 1100
                                        Dallas, TX 75219-4281
                                        Telephone: (214) 521-3605
                                        Fax: (214) 520-1181
                                        Cary McDougal
                                        (Texas Bar No. 13569600)
                                        Carla Burke Pickrel
                                        (Texas Bar No. 13569600)
                                        Cristina Sanchez
                                        (Texas Bar No. 24041856)

                                        - and -

                                        **COSSICH, SUMICH,
                                        PARSIOLA & TAYLOR LLC**
                                        8397 Highway 23, Suite 100
                                        Belle Chasse, LA 70037-2648

Telephone: (504) 394-9000
Fax: (504) 394-9110
Philip F. Cossich, Jr.
(Louisiana Bar No. 1788)
Darren Sumich
(Louisiana Bar No. 23321)
David A. Parsiola
(Louisiana Bar No. 21005)
Brandon J. Taylor
(Louisiana Bar No. 27662)
Christina M. Cossich
(Louisiana Bar No. 32407)
Andrew J. Cvitanovic
(Louisiana Bar No. 34500)
Luana N. Smith
(Louisiana Bar No. 35534)